NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAYNE LABEAU, an individual, | |
| | Hon. Garrett E. Brown, Jr. |
| Plaintiff, | |
| v. | Civil Action No. 08-6300 |
| PETER RENTZIS and DOROTHEA RENTZIS, individuals, | **MEMORANDUM OPINION** |
| Defendants. | |

**BROWN, Chief Judge:**

This matter[1] comes before the Court upon Defendants' motion (Doc. No. 20) for summary judgment. For the following reasons, the Court will grant in part Defendants' motion.

### *Background*

This contract dispute arises from a real estate transaction involving four condominium units in the Salvia Condominium in Cancun, Mexico. The facts relevant to the instant motion are largely undisputed. At some point in 1996 or 1997, Plaintiff Wayne LaBeau, a resident of Minnesota, agreed to purchase beneficial ownership[2] of Units 103A, 103B, 104A, and 104B (collectively "the Units") from Defendants Peter and Dorothea Rentzis. (Defs.' L. Civ. R. 56.1

---

[1]This matter was reassigned to the undersigned by Order of March 15, 2010.

[2]The parties agree that Mexican law prohibits the ownership of property by foreign citizens, but that it permits beneficial ownership of the property by a foreign national through the creation of a trust held by a Mexican bank. It is undisputed that, at the time of the transaction, Defendants were the beneficial owners of the condominium units. (Defs.' L. Civ. R. 56.1 Statement ¶¶ 3–4; Pl.'s L. Civ. R. 56.1 Resp. ¶¶ 3–4.)

1

Statement ("Defs.' Statement") ¶¶ 7, 14, 17–18; Pl.'s L. Civ. R. 56.1 Resp. ("Pl.'s Statement") ¶¶ 7, 14, 17–18.) Although the parties dispute who was responsible for taxes associated with the transaction, the parties agreed to a purchase price of $210,000 for the Units, and that Defendants would sign over the titles to the Units upon receipt of the purchase price. Plaintiff made a series of payments towards the purchase price, consisting of an initial $30,000 check and subsequent, periodic cash payments, usually in the amount of $10,000. (Defs.' Statement ¶¶ 18, 21–23; Pl.'s Statement ¶¶ 18, 21–23.) While the parties disagree whether Plaintiff paid in full, it is undisputed that Plaintiff paid at least $200,000 of the $210,000-purchase price. (Defs.' Statement ¶ 33; Pl.'s Statement ¶ 33.) It appears that the only documentary proof of Plaintiff's payments are Dorothea Rentzis' hand-written receipts that collectively acknowledge payment of $170,000. (Defs.' Statement ¶¶ 35–36; Pl.'s Statement ¶¶ 35–36.)

In August 1998, Defendants notified Plaintiff that they would not sign over title to the Units unless Plaintiff paid the outstanding balance on the purchase price. (Welch Certif., Ex. 2 (LaBeau Dep.) at 83.) By letter of February 22, 1999, Defendants' attorney demanded payment of the same. (Defs.' Statement ¶ 39; Pl.'s Statement ¶ 39.) When Defendants refused to deliver title to the Units, Plaintiff commenced two lawsuits in the state of Quintana Roo, Mexico, against Defendants seeking to impose criminal and civil liability and to compel delivery of the title. (Welch Certif., Exs. 10–12.) The record does not reflect the outcome of those proceedings.

At some point in 1999 or 2000, it appears that Plaintiff agreed to sell Units 103A and 103B ("the 103 Units") to Wayne Buechler, and at some point prior to 2006, it appears that Plaintiff agreed to sell Units 104A and 104B ("the 104 Units") to Robert Montgomery. (*See* Defs.' Statement ¶¶ 43, 47–51; Pl.'s Statement ¶¶ 43, 47–51.) Because Defendants still had the

title for these units, it appears that Buechler and Montgomery attempted to obtain title from Defendants.  (*See* Defs.' Statement ¶¶ 47, 51.)  On November 17, 2006, Defendants executed irrevokable powers of attorney transferring the right to dispose of the title to the 103 Units to Buechler, and transferring the right to dispose of the title to the 104 Units jointly to Buechler and Montgomery.  (Defs.' Statement ¶ 53; Pl.'s Statement ¶ 53.)[3]  In exchange for the transfer, Defendants requested $20,000 from Buechler, comprised of the $10,000 they claimed Plaintiff owed on the original purchase, plus an additional $10,000 to cover the various legal expenses that arose from the initial transaction.  (Defs.' Statement ¶ 48.)

Plaintiff's sale of the 103 Units to Buechler spawned separate litigation in Minnesota state court for breach of contract.  (*See* Welch Certif., Ex. 13 (*LaBeau v. Buechler*, No. 73-CV-07-10097, slip op. (Minn. Dist. Ct. 7th Jud. Dist. Nov. 2, 2009)).)  After a bench trial on the claim that Buechler had failed to make full payment of the purchase price for the 103 Units, as well as others sold by Plaintiff, the Minnesota court recognized that Plaintiff had also breached the contract by failing to provide assurance of title for the Units, but still ordered Buechler to pay moneys owed on the units sold.  (*Id.* at 10–11.)

Plaintiff filed the instant lawsuit against the Rentzises on December 22, 2008, alleging breach of contract, tortious interference with contract, promissory estoppel, fraud, and unjust enrichment.  Defendants now move for summary judgment, arguing that Plaintiff's claims are barred by the statute of limitations, that Plaintiff's testimonial proof is not sufficiently credible, and that the Minnesota state court's damages award collaterally estops Plaintiff from seeking damages for the 103 Units.  This Court has diversity jurisdiction pursuant to 28 U.S.C.

---

[3]For ease of reading, the Court will refer to these events as the "2006 title transfers."

3

§ 1332(a)(1) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000.

### *Analysis*

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

Defendants challenge Plaintiff's claims on the basis of the statute of limitations, lack of substantive proof, and, with regard to Plaintiff's claims based on the 103 Units, collateral estoppel. The Court considers each argument in turn.

    A.  *Statute of Limitations*

Defendants argue that the statute of limitations bars all of Plaintiff's claims. For the most part, the Court agrees. Statutes of limitations operate to "stimulate prompt action and to penalize negligence, while promoting repose by establishing stability in human affairs." *LaFage v. Jani*,

166 N.J. 412, 423 (2001).  In other words, "the purpose of statutes of limitations is to protect defendants from unexpected enforcement of stale claims by plaintiffs who fail to use reasonable diligence in prosecuting their claims." *Id.*  Under New Jersey law, the statute of limitations for Plaintiff's contract, quasi-contract, fraud, and tortious interference claims is six years.  N.J. Stat. Ann. § 2A:14-1 ("Every action at law for . . . any tortious injury to real or personal property, for taking, detaining, or converting personal property, . . . or for recovery upon a contractual claim or liability, express or implied, . . . shall be commenced within 6 years next after the cause of any such action shall have accrued."); *Kopin v. Orange Prods., Inc.*, 297 N.J. Super. 353, 373–74 (App. Div. 1997) (applying six-year statute of limitations to quasi-contract claims); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999) (applying six-year statute of limitations to fraud claims).  A cause of action accrues under New Jersey law when "the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez v. Swyer*, 62 N.J. 267, 272 (1973); *see also S. Cross Overseas Agencies*, 181 F.3d at 425.  "[T]he discovery rule centers upon an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of another person.  Such knowledge involves two key elements, injury and fault." *Lynch v. Rubacky*, 85 N.J. 65, 70 (1981).

Here, Plaintiff's contract, promissory estoppel, fraud, and unjust enrichment claims (Counts I, III–V) are all based on Defendants' allegedly wrongful refusal to tender title to the Units.  (Compl. ¶¶ 28, 35–38, 41–42, 46–48.)  Plaintiff concedes that Defendants informed him in August 1998 that they would not transfer title to the Units unless Plaintiff paid the outstanding $10,000 of the purchase price.  (LaBeau Dep. at 83.)  Defendants reiterated their refusal to

5

transfer title in a February 1999 letter their attorney sent to Plaintiff. (Welch Certif., Ex. 9.) It is undisputed that, pursuant to the parties' agreement, Defendants were obligated to tender title once Plaintiff had paid the full purchase price of the Units. (Welch Certif., Ex. 1 (Rentzis Dep.) at 69–70; *see also* Defs.' Statement ¶ 18; Pl.'s Statement ¶ 18.) At the time that Defendants refused to tender title, Plaintiff believed he had paid the full purchase price for the Units. (LaBeau Dep. at 78-80.) Thus, drawing all inferences in the light most favorable to Plaintiff,[4] Plaintiff had actual knowledge of both an injury and the culpable party when Defendants informed him that they would not transfer title in 1998 and 1999. The undisputed fact that Plaintiff instituted two legal proceedings in Mexico seeking relief from this injury supports this conclusion. (*See* Welch Certif., Exs. 10–12; Pl.'s 56.1 Statement ¶¶ 40–41.)

Plaintiff argues that none of his claims accrued until Defendants transferred title to third parties in 2006, because Plaintiff had not suffered definitive injuries from Defendants' alleged conduct until that time. Plaintiff specifically notes that Defendants had not interfered with his exclusive possession of the Units during this time. (Pl.'s Br. at 5–7.) However, neither Plaintiff's Complaint nor New Jersey law support Plaintiff's argument. Fairly read, only Plaintiff's tortious interference claim alleges an injury stemming from Defendants' 2006 transfer-of-title to third parties; all of Plaintiff's remaining claims assert injuries stemming from

---

[4] Ironically, Plaintiff suggests that, if the Court believes Defendants' account of events—that Plaintiff had not paid the full purchase price for the Units—then the condition precedent would not have been satisfied, and Defendants would not have had an obligation to tender title. Adopting Defendants' assertion of facts for purposes of argument, Plaintiff asserts that his cause of action accrued when the first "breach" occurred—when Defendants transferred the title to third parties in 2006. (Pl.'s Br. at 7 n.1.) The Court is not persuaded, because Plaintiff's proposition would turn both the summary judgment standard and the discovery rule on their heads and undercut the substantive values that these rules represent.

Defendants' refusal to tender title. (*Compare* Compl. ¶¶ 28, 35–38, 41–42, 46–48 *with id.* ¶¶ 31–33.) Plaintiff may not now, in opposing a motion for summary judgment, refashion his theory of injury to bypass the statute of limitations. Furthermore, to the extent that Plaintiff argues that he did not suffer a legally cognizable injury when Defendants refused to tender title—a proposition that, if true, would defeat all but his tortious interference claim on the merits—this argument disregards the fact that New Jersey law permits a land purchaser to rescind the contract to purchase land where the vendor fails to tender marketable title. *See, e.g.*, *Bertrand v. Jones*, 58 N.J. Super. 273, 284 (App. Div. 1960); *Grunt v. Olsan*, 101 N.J. Eq. 506, 507 (N.J. Ch. 1927); 77 Am. Jur. 2d Vendor & Purchaser § 517 ("An agreement to purchase real property may be rescinded where the vendor refuses or is unable to convey a merchantable title, as agreed."). Because Plaintiff had actual knowledge of both an injury and the culpable party when Defendants informed him that they would not transfer title in 1998, his contract, promissory estoppel, fraud, and unjust enrichment claims seeking redress for this injury accrued in 1998. Plaintiff did not file this suit until 2008, more than six years after these causes of action accrued. Consequently, these claims (Counts I, III–V) are barred by the statute of limitations.

      The only remaining question is whether Plaintiff's tortious interference claim (Count II) is likewise barred by the statute of limitations. The Court finds that it is not barred by the statute of limitations, because this claim alleges a separate and distinct injury that occurred within the limitations period: monetary damages incurred from Defendants' transfer of the Units' titles to Buechler and Montgomery. (*See* Compl. ¶¶ 31–32.) Although one could argue that Defendants' refusal to tender title in 1998 constituted the same injury as the 2006 title transfers for purposes of determining when the cause of action accrued, because Defendants' conduct in 1998 should

7

have put Plaintiff on notice that he would not be able to convey marketable title to subsequent purchasers, Plaintiff does not base his tortious interference damages on his subsequent purchaser's inability to receive marketable title. Rather, Plaintiff's tortious interference damages reflect his *subsequent purchaser*'s decision to retain possession of the Units and discontinue paying the agreed-upon purchase price once the subsequent purchaser obtained title from Defendants. This injury was not a foreseeable consequence of Defendants' refusal to tender title to Plaintiff in 1998. Thus, to the extent that the 2006 title transfers caused a third party to breach his contract with Plaintiff, they constituted a new injury for purposes of the discovery rule and established a new limitations period for this claim. Plaintiff filed this claim within the statute of limitations.

Because this Court concludes that Plaintiff's tortious interference claim withstands Defendants' statute-of-limitations challenge, the Court must consider Defendants' additional arguments that Plaintiff's testimonial proof is not sufficiently credible, and that the Minnesota state court's damages award collaterally estops Plaintiff from seeking damages for the 103 Units.

*B. Sufficiency of Plaintiff's Evidence*

Defendants assert that the lack of documentary evidence and the inconsistencies in Plaintiff's allegations and testimony demonstrate that Plaintiff has no credible evidence establishing a genuine issue of material fact. Defendants specifically note that Plaintiff has not presented documentary proof that he paid the final $10,000 installment of the Units' purchase price, and that Plaintiff has asserted different original purchase prices for the Units in different Court documents, including the Complaint in this case, where Plaintiff alleged that the purchase price of the Units was $220,000, instead of the $210,000 price that the parties now agree was the

8

correct price.  (*See* Compl. ¶¶ 15, 17 (averring that Plaintiff agreed to pay Defendants $110,000 each for the 103 Units and the 104 Units).)  The Court recognizes that there have been inconsistencies in Plaintiff's pleadings and the record, but the record on the whole does not suggest that Plaintiff's testimony is contrived to avoid dismissal, as would be the case with a sham affidavit.  Plaintiff testified in his deposition that he paid the full $210,000 purchase price for the Units.  (LaBeau Dep. at 78:11–14.)  It will be for the jury to determine the credibility of Plaintiff's testimony in light of these inconsistencies, not this Court.  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (explaining that "it is inappropriate for a court to resolve factual disputes and to make credibility determinations" at the summary judgment stage).

      C.  *Collateral Estoppel*

Finally, Defendants argue that the Minnesota court's judgment awarding Plaintiff damages for Buechler's breach of contract bars Plaintiff's claims for the 103 Units in this case, which Defendants contend seek the same damages.  The doctrine of issue preclusion, also known as collateral estoppel, "prevents parties from relitigating an issue that has already been actually litigated."  *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007).  But collateral estoppel does not bar a subsequent, different legal claim against a different party.  Defendants have presented no authority for the proposition that joint and several liability will not lie between one who breaches a contract and another who, through tortious interference, causes that party to breach a contract.  Defendants evidently are concerned that Plaintiff would obtain a double recovery for the same harm, one coming from the party who breached the contract (Buechler) and one coming from the party who interfered and thus caused the breach of contract.  Naturally, if

9

Buechler has satisfied the judgment of the Minnesota state court, such that no unremedied injury remains, then Plaintiff will not be able to establish damages for the tortious interference claim. But the merits of Plaintiff's damages are not presently before the Court.

However, to the extent that Defendants invoke collateral estoppel to limit damages for the 103 Units-derived portion of Plaintiff's tortious interference claim to the damages ascertained by the Minnesota state court, Defendants' arguments are well-taken. The Minnesota court in *LaBeau v. Buechler* adjudicated Plaintiff's contract and related claims against the person to whom Plaintiff sold the 103 Units, Wayne Buechler. In that case, Plaintiff sought damages for Buechler's non-payment of the purchase price for multiple condominium units, including the 103 Units Plaintiff had originally purchased from the Rentzises. *See* No. 73-CV-07-10097, slip op. 1–6 (Minn. Dist. Ct. 7th Jud. Dist. Nov. 2, 2009). After a bench trial, that court found as a matter of fact that Buechler owed $65,418.27 for each of the 103 Units at the time he stopped making payments for them, and the court concluded as a matter of law that Buechler owed Plaintiff $348,578.93, plus $55,772.63 interest, in damages for all the condominium units purchased. *Id.* at 7, 11. Although the court did not itemize the damages it awarded, the court's findings of fact demonstrate that the 103 Units constituted $130,836.54 of the damages award, or $65,418.27 for each 103 Unit.

> The party asserting collateral estoppel bears the burden of demonstrating that:
>
> > (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 521 (2006). Once that party has met this threshold burden, the Court must consider the equities of precluding litigation of an issue. *Id.* at 521–22 ("It is equally clear that '[e]ven where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.'") (quoting *Pace v. Kuchinsky*, 347 N.J. Super. 202, 215 (App. Div. 2002)).[5] In the present matter, Plaintiff has not suggested, in either his pleadings or in opposition to Defendants' motion, that Defendants' alleged tortious interference—the 2006 title transfers—caused damages *other* than those sustained from Buechler's breach of his purchase agreement with Plaintiff. Thus, the Minnesota court's decision resolves the same damages issue before this Court—the extent of damages Plaintiff incurred from Buechler's failure to pay the full purchase price of the 103 Units. Furthermore, it is undisputed that this issue was actually litigated in the Minnesota proceeding, that the Minnesota court's decision constitutes a final judgment on the merits, that the issue was essential to that court's judgment, that Plaintiff was a party to the Minnesota proceeding, and that he had a full and fair opportunity to be heard on the issue. Granting preclusive effect to the Minnesota court's determination of damages with regard to the 103 Units would not be unfair in this case. Accordingly, this Court finds that the Minnesota court's decision precludes Plaintiff from

---

[5]Plaintiff contends that Minnesota preclusion rules should guide this Court's determination of the preclusive effect of the Minnesota court's decision, but a court sitting in diversity must apply the preclusion rules of the forum state in which it sits, unless they are incompatible with federal interests. *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 205 (3d Cir. 2004) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001)). Because there is no conflict with federal interests in this case, and because it appears there is no substantive difference between Minnesota and New Jersey preclusion rules, *cf. Barth v. Stenwick*, 761 N.W.2d 502, 508 (Minn. Ct. App. 2009), this Court applies New Jersey's law on collateral estoppel.

relitigating the issue of damages sustained by Buechler's failure to pay the full purchase price for the 103 Units. Plaintiff's damages related to the 103 Units will be capped at $130,836.54, plus the appropriate pro rata share of the interest awarded by the Minnesota court's decision. As noted above, this Court's conclusion with regard to collateral estoppel neither forecloses Plaintiff's cause of action nor speaks to the merits thereof.

*Conclusion*

For the aforementioned reasons, the Court will grant in part Defendants' motion (Doc. No. 20) for summary judgment, such that judgment will be entered in favor of Defendants on Counts I, III, IV, and V of Plaintiff's Complaint. Count II of Plaintiff's Complaint remains, though Plaintiff's damages for the 103 Units will be limited to the damages assessed by the Minnesota court in *LaBeau v. Buechler*, No. 73-CV-07-10097, slip op. 1–6 (Minn. Dist. Ct. 7th Jud. Dist. Nov. 2, 2009). An appropriate form of order accompanies this Memorandum Opinion.

Dated: June 14, 2010

                                                   /s/ Garrett E. Brown, Jr.
                                         GARRETT E. BROWN, JR., U.S.D.J.